MONAGHAN, CHAIRMAN STATE TAX COMM. *v.*
PONTOTOC ELECTRIC POWER ASS'N.

No. 41435          January 4, 1960          116 So. 2d 827

*John E. Stone,* Jackson, for appellant.

*T. Fred Wicker*, Pontotoc, for appellee.

GILLESPIE, J.

Pontotoc Electric Power Association, appellee here, hereinafter called Association, is a non-profit membership cooperative created for the purpose of providing electric power to its members. It was originally organized in 1935 under Chapter 100, Mississippi Code of 1930. Its capital was obtained by each member paying a membership fee of $100, which could be paid in installments. The Association was thereafter reorganized under the provisions of Chapter 184, Laws of 1936 (Article 3, Chapter 6, Title 21, Vol. 2A Recompiled, Mississippi Code of 1942). On September 21, 1939, the by-laws of the Association were changed to provide for the payment of a membership fee of $10.00, of which $9.50 is refundable when the holder of the membership ceases to be a member of the Association. On the same date the by-laws were changed to provide that in addition to the established rates for electric power consumed, each consumer would pay with his monthly bill an amortization charge of one cent per kilowatt hour used, the minimum charge to be twenty-five cents and the maximum $1.00 monthly; and since September 1939, such charge has been collected. The amortization charge is

collected pursuant to Section 5 of the Association's by-laws, as follows:

"Section 5. Amortization Charge. Every · customer served through the Cooperative shall pay, in connection with each meter through which service is rendered a monthly amortization charge payable at the same time the monthly bill for electric energy is payable, equivalent to one cent (1c) for each kilowatt hour of electric energy used up to the first one hundred kilowatt hours (100 KWH), such charge to be no less than twenty-five cents (25c) nor more than One Dollar ($1) per month per service connection. The proceeds of such amortization charges shall be segregated from all other revenues and receipts of the Cooperative and shall be used exclusively for payment on account of the principal of or the interest on any and all long-term obligations or indebtedness issued or assumed by the Cooperative. Such charge shall be continued until all the long-term obligations or indebtedness of the Cooperative shall be fully paid and discharged."

Under the bylaws and under the contract between the Association and the Tennessee Valley Authority, these amortization charges are segregated from other charges for electrical service and have been used exclusively for the repayment of long-term indebtedness of the Association.

· At the time of the trial, the Association owed the Rural Electrification Administration about $750,000. The Association has made from the funds thus described payments in advance on its indebtedness to the Rural Electrification Administration. The payment of the Amortization charges must be made by the customers in order to obtain electric power service from the Association ·and no one can become a member without making such payments. This amortization charge is also collected from non-member consumers. Each member of the Association has one vote regardless of the amount of power

consumed and regardless of the amount of amortization charges paid. Amortization charges have never been refunded to the members and there is no plan to refund such charges. The Association has 400 or 500 members who are inactive and do not receive electric current and to whom the $10 membership fee has not been refunded. These members do not make amortization payments since they are not consumers of electricity. The receipts by the Association on account of the amortization payments amount to about $74,000 annually.

Article VIII of the bylaws of the Association providing for the disposition of revenues is as follows:

"Revenues of the Cooperative (exclusive of amortization charges which shall be disposed of as hereinbefore in Section 5 of Article 1 of these bylaws provided) for any fiscal year in excess of the amount thereof necessary for:

"Payment of all current operating expenses, including salaries, wages, cost of materials and supplies, power at wholesale, taxes and insurance;

"(b) Payment, at maturity, of interest on all bonds, notes or other principal indebtedness issued by, or the payment of which shall have been assumed by, the Cooperative, and for amortization charges on all such bonds, notes or other principal indebtedness and/or sinking fund payments thereon;

"(c) The establishment and maintenance of reasonable reserves for replacements, new construction and for contingencies, and to provide a reasonable amount of cash working capital; and

"(d) Payment of, or the establishment and maintenance of a reserve in an amount (with appropriate allowance for the proceeds of amortization charges) sufficient for the payment of all bonds, notes or other principal indebtedness, including interest thereon to the date of actual payment, shall, subject to contractual obligations of the Cooperative, be distributed by the Co-

operative to its members as either (1) patronage funds prorated in accordance with the patronage of the Co-operative by the respective members paid for during such fiscal year, or (2) by way of general rate reductions, or (3) by reimbursement of membership fees, or (4) by combination of such methods."

The amortization charges collected by the Association for the period June 1, 1958 through August 31, 1958 were not returned on the Association's sales tax return. The Chairman of the State Tax Commission made a deficiency assessment for said amortization charges. The Association paid the tax and sued for a refund of $510.91. The lower court entered judgment for the Association and the Chairman of the State Tax Commission appeals.

The question is whether the amortization charges collected by the Association from its consumers is income within the meaning of the Sales Tax Statute or whether such collections are contributions to capital.

Prior to the enactment of Chapter 574, Laws of 1958, cooperative electric power associations were exempt from the payment of sales tax, but that law specifically removed such exemption. The 1958 Act levied the tax on the gross income of the business engaged in by the Association. "Gross Income" is defined in Section 1-b(8) of said Chapter 574, Laws of 1958, as follows:

"' Gross income' means the total charges for service or the total receipts (actual or accrued) derived from trades, business, or commerce by reason of the investment of capital in the business engaged in, including the sale or rental of tangible personal property, compensation for labor and services performed, and including the receipts from the sales of property retained as tolls, without any deduction for rebates, cost of property sold, cost of materials used, labor costs, interest paid, losses or any expense whatever."

Section 5481, Mississippi Code of 1942, one of the Sections in the Code chapter under which the Association was reorganized, is as follows:

"A corporation formed hereunder shall have power to charge reasonable fees, rents, tolls, prices and other charges for service rendered which shall be sufficient at all times to pay all operating and maintenance expenses necessary or desirable for the prudent conduct and operation of its business and the principal of and interest on such obligations as the corporation may have issued and/or assumed in the performance of the purpose for which it was formed and the revenues and receipts of a corporation shall first be devoted to such operating and maintenance expenses and to the payment of such principal and interest and thereafter to such reserves for improvement, new construction, depreciation and contingencies as the board may from time to time prescribe. Revenues and receipts not needed for these purposes shall be returned to the members, by the reimbursement of membership fees, or by way of general rate reductions, as the board may decide."

██ █ We are of the opinion that the amortization charge is a part of the income of the Association and is taxable under the Sales Tax Statute. It is clearly a part of the charge for service. It is not charged members who do not receive service but who remain members. It is charged all consumers and no one may receive service without paying the amortization charge. The bylaws provide for customers who may not be members under certain circumstances. If there are such non-member consumers, they would have to pay the amortization charge in order to receive service. The membership fees are refundable and are not taxable. The amortization charges are not refundable. The amount is related to the amount of electricity consumed. The payment of the amortization charge does not give the consumer paying the same any greater interest in the Association than the payment of the same amount

as a part of the service bill. We are of the opinion that under Section 5481, Mississippi Code of 1942, all charges collected by the Association are to be disposed of as herein provided, and to designate a part of the monthly charge as an amortization charge for the repayment of long-term indebtedness simply relieves the Association from collecting the same amount on the regular bill; and it makes no difference, in determining whether the charge is income, whether a part of the monthly bill is designated as an amortization charge and used to pay the long-term debt or whether the same amount is added to the regular monthly bills for the same purpose.

The amortization charge has the characteristics of income to the Association rather than a contribution to capital. Cf. Teleservice Company of Wyoming Valley vs. Commissioner of Internal Revenue, 254 F. 2d 105. Detroit Edison Company v. Commissioner of Internal Revenue, 319 U. S. 98, 87 L. Ed. 1286.

The Legislature did not see fit to tax less than the entire income of all electric power associations. There are no exceptions or exemptions in the statute. Exemptions or exceptions from a tax statute are to be construed most favorably to the State. New Standard Club v. McGowen, 111 Miss. 92, 71 So. 289; Currie-Finch Brick & Lumber Company v. Miller, 123 Miss. 850, 86 So. 579; Adams County v. National Box Company, 125 Miss. 598, 606, 88 So. 168; Leaf Hotel Corporation v. City of Hattiesburg, 168 Miss. 304, 309, 150 So. 779.

We have carefully considered the able arguments made by appellee and find no basis for the affirmance of the decree ordering the refund. Accordingly, the decree of the lower court is reversed and judgment entered here for appellant.

Reversed and rendered.

*Roberds, P. J.,* and *Kyle, Arrington* and *Ethridge, JJ.,* concur.